UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-00072-CR-UNGARO/SIMONTON

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**BRUCE McGILL,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on a Superseding Petition and Order for Action on Conditions of Supervised Release (DE # 40). This matter was referred to the undersigned Magistrate Judge by the Honorable Ursula Ungaro, United States District Judge, to take all necessary and proper action as required by law, including but not limited to an evidentiary hearing, with respect to whether or not the Defendant's Supervised Release should be revoked (DE # 50). Hearings were held on December 18, 2008 and January 26, 2009 before the undersigned Magistrate Judge. For the reasons stated below, it is recommended that the Defendant's Supervised Release be revoked.

    I.    **BACKGROUND**

On November 1, 2001, the defendant was sentenced to 77 months of incarceration and three years of supervised release in addition to an assessment of $100.00 for possessing a firearm as a convicted felon (DE # 26).

The defendant is charged with violating eight conditions of his supervised release. The government dismissed Violation No. 2 and the defendant admitted

**Violations No. 4-8.**[1]

The defendant contests the following two violations of his supervised release:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1. | **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about May 5, 2008, in Miami, Florida, the defendant committed the offense of Cocaine Sell/Deliver/Possession with Intent, contrary to Florida State Statute 893.13(1)(A)(1), a second degree felony. |
| 3. | **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about May 5, 2008, in Miami, Florida, the defendant committed the offense of Cannabis Possession, contrary to Florida State Statute 893.13(6)(B), a first degree misdemeanor. |

   II.   **PROCEDURAL HISTORY**

   A.   **The December 18, 2008 Hearing**

At the December 18, 2008 hearing, the parties focused on whether a state court Judgment of Conviction premised upon a no contest plea, without more, was sufficient to establish that Defendant committed the offenses and, thus, violated the terms of his supervised release.

---

[1] **Violation No. 2 charges the defendant with failing to refrain from violation of the law by committing the third degree felony offense of Cocaine Possession, contrary to Florida State Statute 893.13(6)(A), on May 5, 2008; Violation No. 4 charges the defendant with failing to notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer on May 5, 2008; Violation No. 5 charges the defendant with failing to work regularly at a lawful occupation since on or about January 21, 2008; Violation No. 6 charges the defendant with failing to answer truthfully all inquiries by the probation officer regarding his employment status on April 24, 2008 by stating falsely that he secured full-time employment at City Care Car Wash; Violation No. 7 charges the defendant with failing to submit a truthful and complete written monthly report within the first five days of each month for the months of March, April and May 2008; Violation No. 7 charges the defendant with failing to report to the probation officer as directed by failing to comply with an April 30, 2008 letter sent by the probation officer to his home address instructing him to report to the U.S. Probation Office on May 12, 2008 (DE # 40).**

1.     **The Government's Position**

At the initial December 18, 2008 hearing, to establish that the defendant committed the contested violations, the government introduced only (1) the transcript of the Plea Colloquy in Florida state court, in which the defendant pleaded no contest to the crimes that form the basis for the supervised release violations alleged in the instant petition; (2) a certified copy of the Judgment of Conviction in Florida state court adjudicating the defendant guilty as to the crimes that form the basis for the supervised release violations alleged in the instant petition; and (3) the testimony of Assistant State Attorney Sasha Bandeles, who corroborated the fact that the defendant entered a no contest plea to the state court charges; was adjudicated guilty; and was sentenced to time served.[2]  She also testified that the Honorable Spencer Eig, the state court judge who accepted the plea, reviewed the arrest affidavit before he accepted the parties' stipulation that there was a factual basis for the plea, and made a finding that there was a factual basis.[3]

The government contends that the certified copy of the defendant's Judgment of Conviction in state court is conclusive proof that he committed the state court offenses that constitute Violations No. 1 and 3 of the conditions of his supervised release.[4]  The

---

[2] The undersigned notes that, due to an undisputed clerical error, the Judgment of Conviction erroneously states that the defendant pled guilty to the state court charges, but the parties agree that the defendant in fact entered a no contest plea.

[3] Although ASA Bandeles did not have a specific recollection of Judge Eig reviewing the arrest affidavit in the case at bar, she testified that she had been assigned as a prosecutor in his division for a year, and that his practice was to do so.

[4] Defendant did not object to the introduction of the Judgment of Conviction or the Plea Colloquy pursuant to Federal Rule of Evidence 410 and, thus, Rule 410 does not affect the instant analysis.

government was expressly provided the opportunity, in a continued evidentiary hearing if necessary, to introduce exhibits and call witnesses to rebut Defendant's testimony that he did not commit the state court crimes to which he pled no contest.  The government declined to put on a rebuttal case and relied solely on the state court Judgment of Conviction, Plea Colloquy and testimony of the state prosecutor (Realtime Transcript ("Tr.") at 14, 27).  At the December 18, 2008 hearing, the government did not introduce any additional independent evidence that Defendant committed the state court offenses, such as the testimony of the arresting officers, or lab reports concerning the substance seized from Defendant (Tr. at 11).

### 2. The Defendant's Position

Although Defendant acknowledged that he was *convicted* of the state court charges, he insistently denies having *committed* those offenses.  Thus, Defendant's rebuttal case consisted of his testimony, under oath, that he did not commit the underlying state court offenses to which he pled no contest and was adjudicated guilty. The defendant's testimony on direct examination consisted of the answer, "No," when asked by his counsel if he had committed the offenses charged in the Petition.  On cross-examination, he admitted that he had pled no contest to the charges, and said that he had done so because the United States Probation Officer assigned to his case had told him that he was going to be found guilty of violating his supervised release in state court regardless of whether he pled guilty or not guilty in state court.

### 3. The Court's Post-Hearing Rulings

After the December 18, 2008 hearing, the undersigned ruled from the bench that the state court Judgment of Conviction based upon Defendant's no contest plea was sufficient to establish that Defendant committed the offenses that formed the basis for

4

his supervised release revocation petition.

Subsequent to the hearing, however, the undersigned issued a January 15, 2009 Order Setting Further Evidentiary Hearing.  In that Order, the undersigned noted that, at the initial hearing, the parties and the Court had focused on the significance of Defendant's no contest plea in state court while neglecting to introduce any evidence regarding the circumstances of the underlying offense, such as the arrest affidavit or the testimony of any of the arresting officers.  Thus, the undersigned determined that it was necessary to hold another evidentiary hearing for the purpose of taking evidence relating to the underlying state court offenses to allow the District Court to determine the appropriate sentence if it orders Defendant's supervised release to be revoked (DE # 60).

B.     The January 26, 2009 Hearing

Thus, a further evidentiary hearing was held before the undersigned on January 26, 2009, in which the government introduced (1) the testimony of Miami-Dade Police Department Detective Hugh Oliphant and (2) the arrest affidavit ("A-Form") relating to the state court offenses that form the basis of the instant petition.  The undersigned finds that Detective Oliphant was a credible witness.[5]

Detective Oliphant testified that, on May 5, 2008, he was conducting physical surveillance of Defendant through binoculars from a distance of 20-25 yards away in an unmarked car.  He observed Defendant, who was sitting on a milk crate at a street corner near a stop sign and watched as individuals approached Defendant, engaged in a short conversation and then gave him money.  Then, Defendant would look up and down the

---

[5] This credibility determination is based upon his demeanor and the forthright direct answers he gave to questions.  For example, Detective Oliphant readily acknowledged the limitations to his observations when questioned on cross-examination.

street, reach into the stop sign, remove a plastic bag and hand an item to the individual that he had removed from the plastic bag.  After the transaction, Detective Oliphant called for other officers to arrest the buyers outside of Defendant's view.  This happened between 2 and 4 times before Detective Oliphant called for a "seller take-down."  He described Defendant to other officers who made the arrest.  After the arrest, Detective Oliphant confirmed that the person in custody was the person he identified as the seller in the drug transactions.

The A-Form is consistent with Detective Oliphant's testimony and states that, after arresting Defendant, the arresting officers "recovered a clear plastic bag" from the stop sign "containing 11 red clear baggies of crack cocaine [and] 7 purple clear baggies of crack cocaine;" and, during the search of Defendant incident to his arrest, they recovered a marijuana joint and two clear baggies of marijuana in Defendant's left-front pant pocket, as well as $74.00 in his left-rear pant pocket.  Detective Oliphant testified that the currency Defendant carried was in small bills that are indicative of the kind of drug sales that Defendant was convicted of engaging in.

On redirect examination, Detective Oliphant testified, based on his 8 years of experience with the Miami-Dade Police Department, that the State Attorney's Office does not pursue cocaine prosecutions without a positive lab report confirming that the substance is cocaine.

C.   The Defendant's Position

Defendant asserted that government failed to prove that the substance in the plastic bags retrieved from the stop sign was cocaine under *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994), and *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983). Although Detective Oliphant claimed that his experience and observations – including

**6**

the way the substance was packaged – allowed him to conclude that the items retrieved from the stop sign were narcotics, he admitted on cross-examination that he could not rule out the possibility that Defendant was selling sham cocaine based on his personal observations alone.  Defendant noted that the government did not introduce any lab reports or the testimony of a chemist to establish that the items recovered at the scene were narcotics.  Defendant also argued that Detective Oliphant's testimony should not be permitted to include the hearsay statements that he learned from his discussions with the arresting officers; and, relatedly, Defendant argued that the Court should not admit the A-Form because it was prepared by the arresting officers, and not Detective Oliphant.

### III.     ANALYSIS

The first issue presented in this case is whether a state court Judgment of Conviction based upon a *nolo contendre* plea is sufficient, without more, to establish by a preponderance of the evidence that the defendant committed those crimes and therefore violated the terms of his Supervised Release.

The undersigned notes that the Third Circuit Court of Appeals addressed this precise question in *United States v. Poellnitz*, 372 F.3d 562 (3d Cir. 2004), and the analysis in that case has persuasive force here.  In *Poellnitz*, the defendant challenged the District Court's reliance on his no contest plea in state court as evidence that he violated his Supervised Release; and, the Court stated that the facts presented the "novel question" of "whether [the defendant's] *nolo contendre* plea, without more, is sufficient to establish that he violated a condition of supervised release even under the relatively relaxed burden of proof that applies . . . ."  *Id.* at 566.  The answer, according to the Third Circuit, "depends upon (1) what actually constitutes a violation of the condition

of release, and (2) what significance we attribute to a *nolo* plea." *Id.* The undersigned will address each aspect of the analysis in turn below.

    A.    <u>What "Actually Constitutes" a Violation of the Condition of Release</u>

The undersigned finds, consistent with the *Poellnitz* opinion, that it is the *commission* of a crime, and not the mere *conviction* of a crime, that "actually constitutes" a violation of the defendant's condition of release (Judgment, DE # 26 at 3) ("The defendant shall not *commit* another federal, state or local crime.") (emphasis added). Thus, the undersigned rejects the government's primary argument that the Judgment and Conviction based on a *nolo contendre* plea, without more, conclusively establishes that Defendant violated his Supervised Release, because, "[w]hile a *nolo* plea is indisputably tantamount to a conviction, it is not necessarily tantamount to an admission of factual guilt." *Poellnitz*, 372 F.3d at 566 (citing *United States v. Wyatt*, 762 F.2d 908, 911 (11th Cir. 1985)). Having established that the Judgment of Conviction alone does not suffice to establish a Supervised Release violation, the undersigned must determine whether a preponderance of the evidence, including the Judgment of Conviction, establishes that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3).

    B.    <u>The Significance of a *Nolo* Plea</u>

As the *Poellnitz* court observed, "the effect of the *nolo* plea in question here is governed by state law." 372 F.3d at 567. If, on the one hand, the forum state does not recognize a no contest plea as an admission of guilt, then the Judgment of Conviction based on the plea cannot be given any evidentiary weight at the evidentiary hearing; but, on the other hand, if the forum state considers a no contest plea as an admission of the underlying conduct, then the Judgment of Conviction is "entitled to whatever weight the

8

District Court [chooses] to give it" in determining whether the defendant actually committed the state crime of which he was convicted. *Id.*

The Florida Supreme Court, in *Maselli v. State*, 446 So. 2d 1079, 1081 (Fla. 1984), held that "a conviction entered upon a plea of nolo contendre by a probationer is a sufficient lawful basis for revocation of probation . . . because the court, before rendering judgment of conviction on a plea of nolo contendre[ ] must hold a hearing and be satisfied that the plea is voluntary and that a factual basis exists for accepting it." *Id.* The Florida Supreme Court added that such a conviction "is a clearly sufficient basis for the revocation" because "[a] plea of nolo contendre relieves the state of its burden of proving the factual allegations of the indictment or information." *Id.* at 1080.

Defendant's attempts to distinguish this case from *Maselli* are unavailing. In a supplemental memorandum filed subsequent to the evidentiary hearing (DE # 59), he cites *Koenig v. State*, 597 So. 2d 256 (Fla. 1992), for the proposition that, "[p]rior to accepting a plea of no contest, the trial judge must receive in the record factual information to establish the offense to which the defendant has entered his plea." *Id.* at 258. Defendant contends that *Koenig* applies here and that there is no basis to conclude that he committed the offenses based on his conviction because the conviction was based on a stipulation without establishing a factual basis for the plea in the record. *Koenig*, however, is distinguishable from the case at bar because the question in that case was whether a plea in a death penalty case was sufficient where there was a stipulation without a factual basis in the record to support the plea.

Here, the question is not whether the plea is valid; indeed, there has been no challenge to the sufficiency of the plea itself to support the conviction. Rather, the question is whether the conviction is sufficient proof that the defendant committed the

underlying offense for the purpose of revoking a term of supervised release. For the answer to this question, the undersigned returns to the clear expression of Florida law, as stated by the Florida Supreme Court in *Maselli*, that a conviction based on a no contest plea "is a clearly sufficient basis" for revoking a defendant's supervised release. 446 So. 2d 1079, 1081.[6] As in *Maselli*, the undersigned finds that the Judgment of Conviction, while not determinative, is *prima facie* evidence that the defendant in fact committed the offenses with which he was charged and convicted in state court pursuant to his no contest plea. The undersigned finds that Defendant's bare denial that he committed those acts, without explaining the circumstances surrounding his arrest, is not credible when viewed in light of the plea colloquy and the resulting Judgment of Conviction.

The *Koenig* standard for vacating a plea simply does not apply in cases like this one, when the government is relying on a conviction based upon a no contest plea to revoke a defendant's supervised release. The Defendant's proposed approach mirrors the procedure that was repudiated by the Florida Supreme Court in *Maselli*, which expressly held that courts are not required examine the circumstances surrounding the *nolo* plea and undertake "further inquiry into whether the probationer in fact committed the offense" in order to revoke a term of probation or supervised release. *Maselli*, 446 So. 2d at 1081 (disapproving *Donaldson v. State*, 407 So. 2d 623 (Fla. 5th Dist. Ct. App. 1981)). In other words, the Judgment of Conviction itself can serve as evidence that the

---

[6] As noted previously, Ms. Bandeles, the state court prosecutor, testified that she tried cases in front of the same trial judge for a year and, based on her experience, the judge "does review" the A-Form and Information prior to accepting any plea. She acknowledged however, that the state court proceedings do not reflect that this took place in the context of this case; and, that she does not know if the trial judge reviewed the A-Form and Information in this particular case.

10

defendant committed the offense and it is not necessary for the Supervised Release revocation proceedings to be treated as a direct attack on the validity of the plea by requiring the government to prove that there is an adequate factual basis for the plea in every case.

In these collateral Supervised Release Revocation proceedings, it is sufficient that the state court adjudicated the defendant guilty and that it did so based upon its finding that a factual basis for the plea existed.  *See Maselli v. State*, 446 So. 2d at 1080. The validity of the Judgment of Conviction has not been refuted and the undersigned concludes, consistent with *Maselli*, that the fact of conviction of a crime in state court is itself evidence of the commission of that crime, even if the conviction is based on a no contest plea.

### C. Additional Evidence that Defendant Committed the State Court Offenses

It is not necessary to rely solely on *Maselli* and the Judgment of Conviction in order to conclude that revocation is appropriate in this case because the government, at the January 26, 2009 hearing, introduced additional evidence to bolster its contention that Defendant committed the underlying state court offenses.  As described in more detail above, before calling for his arrest, Detective Oliphant watched as Defendant conducted 2 to 4 hand-to-hand drug transactions by accepting currency from individuals who approached him on the street, looking up and down the street and then giving them the contents of a plastic bag that were in a stop sign approximately eight feet away from where Defendant had been sitting.  This narrative is consistent with the A-Form prepared by the arresting officers and introduced into evidence by the government.

Although Defendant challenges the government's use of hearsay testimony and questions whether the government can establish that he committed the offense of

11

selling cocaine without a lab report or similar evidence demonstrating that the substance seized at the time of his arrest was not sham cocaine, the undersigned finds these arguments to be unpersuasive.  The entire record in this case – including the Judgment of Conviction, the live testimony of Assistant State Attorney Bandales and Detective Oliphant, as well as the A-Form – overlap and interlock in a manner that establishes by a preponderance of the evidence that Defendant committed the offenses to which he pled no contest and was adjudicated guilty of committing in state court.  Defendant's bald assertion to the contrary – by flatly denying that he committed the charged offenses without explaining the circumstances surrounding his arrest – does not alter the conclusion that the government satisfied its burden of proof.

It is not necessary for the government to shoulder the burden and expense of introducing the live testimony of the arresting officers when their hearsay statements – as recounted in the testimony of Detective Oliphant as well as in the A-Form – were both reliable and merely used to corroborate Detective Oliphant's memory of relevant events, and not the only evidence that Defendant violated the terms of his supervised release.  *See United States v. Balogun*, 168 Fed. Appx. 395, 397 (11th Cir. 2006).   The undersigned specifically finds that to the minimal extent hearsay evidence was considered, the government's interest in minimizing the number of law enforcement officers called away from their regular duties outweighed the defendant's right to confront adverse witnesses.  *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994).

Similarly, Defendant is incorrect to suggest that the only way for the government to prove that the substances seized from Defendant were not sham cocaine and marijuana is through a lab report or the testimony of a chemist.  Once again, the Judgment of Conviction and Plea Colloquy establish that there was a factual basis for

his no contest plea and subsequent conviction; and, the fact that Detective Oliphant testified that the State Attorney's Office will not pursue drug prosecutions without positive lab results only bolstered this conclusion.  Although his attorney suggested that Defendant may have possessed sham drugs at the time of his arrest, the only evidence to the contrary that he introduced in these proceedings was his negative response when asked by his attorney during his direct examination at the December 18, 2008 hearing whether he committed the state court offenses.  The government has satisfied its burden here by a preponderance of the evidence and it is not constrained to prove certain elements of its case (i.e., that Defendant was selling actual, not sham, drugs) by a particular mode of proof (i.e., a lab report or a chemist's testimony).

In sum, the undersigned finds that although Defendant's state court Judgment of Conviction pursuant to a no contest plea, without more, is not conclusive proof that he violated a condition of his supervised release, the Judgment and Conviction does constitute evidence in support of the government's contention that he committed the offense of which he was convicted, because Florida law required the state Court to find a factual basis for the conviction.  The undersigned also concludes that Defendant's conclusory denial did not explain any of the circumstances surrounding his arrest and therefore failed to effectively rebut the government's evidence – including the testimony of Detective Oliphant and the arrest affidavit – that he actually committed the offenses that formed the basis of his conviction in state court pursuant to his no contest plea. Based upon a review of the record as a whole it is, accordingly,

**RECOMMENDED** that Defendant's supervised release based on Violation Nos. 1 and 3, as set forth above, as well as his admission to committing Violation Nos. 4-8.

**The parties have ten (10) days from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein.** *LoConte v. Dugger*, **847 F.2d 745 (11th Cir. 1988);** *RTC v. Hallmark Builders, Inc.*, **996 F.2d 1144, 1149 (11th Cir.1993).**

**DONE AND SUBMITTED** in Chambers in Miami, Florida on February 9, 2009.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record